## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SERRA SPRING & MANUFACTURING, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. _____ |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| SARAH RAMNARINE and KELLIE PERSAUD, | ) ) ) | |
| Defendants. | ) ) | |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, Serra Spring & Manufacturing, LLC ("Serra Spring" or "Plaintiff"), through its counsel, Barnes & Thornburg LLP, for its Verified Complaint against Defendants, Sarah Ramnarine ("Ramnarine") and Kellie Persaud ("Persaud") (collectively, "Defendants"), states as follows:

## I.   INTRODUCTION AND PARTIES

1.   This action arises out of Defendants' breach of a non-compete agreement, unfair competition and violation of Federal statutory law following Ramnarine's employment termination from Serra Spring.

2.   Serra Spring has been in business for many years and is a custom spring manufacturer that provides products for the following industries in the North

American and international markets: automotive; heavy equipment manufacturers; furniture; medical devices; electronics; military and aerospace.

3.    On February 6, 2020, Ramnarine sold one hundred percent of Serra Spring to Serra Spring's parent company Enste & American Investors Holding GmbH ("Enste"). On the same date, she entered into in an Employment Agreement (the "Agreement") with Serra Spring (then owned by Enste) with an effective date of January 1, 2020. *See* **Ex. A.** The Agreement transferred all the liabilities and assets of Serra Spring to Enste, the parent company, and includes a non-competition provision and provisions to protect Serra Spring's confidential and proprietary information.

4.    Ramnarine's performance as the Chief Operating Officer ("COO") of Serra Springs was poor. Accordingly, on December 9, 2021, Serra Spring advised Ramnarine of the termination of her employment effective January 8, 2022. **Ex. B.** Ramnarine immediately told Serra Spring that despite her non-compete, she would violate the non-compete provision and operate a directly competing business.

5.    Ramnarine was true to her word. Ramnarine, along with Persaud, who is Ramnarine's daughter, began selling competing products under the Serra Spring name immediately after Ramnarine's termination, and multiple customers have stated to Serra Spring that the Defendants are soliciting sales from them, or are confused as to who owns or controls Serra Spring.

6.    Since December 9, 2021, the Defendants continue to violate the non-compete provision in the Agreement and have solicited and/or made sales of competitive products to Serra Spring customers using the Serra Spring name and marks, including sales or solicitation of sales to at least nine Serra Spring customers, including ABC Technologies, Airvac Industries, JVIS USA LLC, Meritor, Inc., Nederman Manufacturing and Logistics LLC, RPB Safety LLC, Sky Jack, Inc., Sales & Engineering, Inc., and Nordco Inc. Each of these customers are or were long term customers of Serra Spring and Serra Spring had a reasonable expectation of future sales of customer competing products to these customers.

7.    During her employment, Ramnarine also had access to highly sensitive competitive data and other information which she accessed through her personal computer and Serra Spring's computers. This proprietary information and data is subject to the confidentiality provisions of the Agreement ("Confidential Information"). **Ex. A at 23.** Ramnarine has failed to return the Confidential Information and Serra Spring believes she continues to access and use the Confidential Information to unlawfully compete with Serra Spring in violation of the Agreement and in violation of Federal law.

8.    Serra Spring brings this action to remedy Defendants' false association and unfair competition (15 U.S.C. § 1125(a)(1)(A)) and false advertising and unfair competition (15 U.S.C. § 1125(a)(1)(B)) under Section 43(a) of the Lanham Act,

misappropriation of trade secrets in violation of the federal Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.* ("DTSA"), exceeding access to computer and electronic data and failure to return the data that belongs to Serra Spring, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), breach of the Agreement, common law unfair competition, and tortious interference with business relations and contracts.

9.     Plaintiff Serra Spring, whose principal place of business is located in Chicago, Illinois, is organized under the laws of Michigan.

10.     Sarah Ramnarine is a citizen of Canada and resides in this District and in Michigan.

11.     Kellie Persaud is a citizen of Michigan and resides in this District and in Michigan.

## II.     JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over Plaintiff's claims for false association and unfair competition and false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), violation of the DTSA, 18 U.S.C. § 1836, *et seq.*, and violation of the CFAA, 18 U.S.C. § 1030, pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. Defendants solicited sales from customers in this District using Serra Spring's name and marks; falsely represented that the competing products they sold were from

Serra Spring in this District; and maintain an inventory of competing products in this District. Defendants use the Confidential Information constituting Serra Spring's trade secrets to compete in this District and throughout the United States. Ramnarine accessed the computer and electronic data in this District and is using the data to solicit sales from customers in this District and throughout the United States.

13.     Plaintiff's claims for breach of contract, common law unfair competition, tortious interference with contract and tortious interference with business relationships occurred, in whole or in part, in this District, and Plaintiff suffered at least some of its damages in this District. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 and pendent jurisdiction because the state law claims set forth in Counts 5-8 are so related to the claims arising under federal law that they form part of the same case or controversy under Article III of the U.S. Constitution. The contract was formed in this District; Defendants have solicited customers for sales in this District; interfered with Plaintiff's business relationships in this District; and are wrongfully competing in this District (along with in Canada).

14.     This Court has personal jurisdiction over Defendants because they are residents of Michigan, the Agreement states that it shall be governed by the laws of the State of Michigan, the alleged violations occurred in whole or in part in Michigan, and Defendants have transacted business with Plaintiff and with Plaintiff's customers in Michigan, including in this District.

15.     Venue in this district is proper under 28 U.S.C. § 1391(b)(1) and (b)(2), as both Defendants reside in this District and a substantial part of the events giving rise to the claims occurred in this District.

### III.   FACTS

### A.   The Agreement

16.     On February 6, 2020, Ramnarine and Serra Spring entered into the Agreement whereby Enste purchased a 100% interest in Serra Spring from Ramnarine and separately agreed to employ Ramnarine as the COO of Serra Spring. **Ex. A at 1, 20.**

17.     The Agreement imposed various contractual obligations on Ramnarine both during her employment and after her separation from Serra Spring, including a non-compete provision.

18.     In relevant part, the non-compete provision of the Agreement states:

### 5.   No Competition; No Solicitation

(a)   *No Competition.* During the period beginning on the date of this Agreement and ending two years following the date the Employee ceases to be an employee of Company, the Employee shall not, directly or indirectly, own, manage, operate, join, control, participate in, invest in or otherwise be connected or associated with, in any manner, including as an officer, director, employee, partner, consultant, advisor, proprietor, trustee or investor, any Competing Business which conducts business within 250 miles of the Principal Office … For purposes of this Agreement, the term "Competing Business" shall mean any business, entity or person that designs, manufactures or sells custom springs, like compression springs,

extension springs, disc springs, Belleville springs, leaf springs, constant
force springs, etc., whether made from round or flat raw material.

**Id. at 21-22.**

19.    The Agreement expressly defines the "Principal Office" as 7515 19
Mile Road, Sterling Heights, Michigan 48314. Serra Spring currently maintains an
inventory of tooling at that address.

20.    Section 7 of the Agreement relates to Confidential Information and
Proprietary Rights and provides as follows, in relevant part:

> *(a)    Existence of Confidential Information.* The Company
> owns and has developed and compiled, and will develop and compile,
> certain proprietary techniques, trade secrets and confidential
> information which have great value to its business (referred to in this
> Agreement, collectively, as "Confidential Information"). Confidential
> Information includes not only information disclosed by the Company
> to the Employee, but also information developed or learned by the
> Employee during the course or as a result of employment with the
> Company (including prior to the commencement of this Agreement),
> which information shall be the property of the Company. Confidential
> Information includes all information that has or could have commercial
> value or other utility in the business in which the Company is engaged
> or contemplates engaging, and all information of which the
> unauthorized disclosure could be detrimental to the interests of the
> Company, whether or not such information is specifically labeled as
> Confidential Information by the Company. By way of example and
> without limitation, Confidential Information includes any and all
> information developed, obtained or owned by the Company, its parent,
> subsidiaries, affiliates, partners or competitors concerning trade secrets,
> techniques, know-how (including designs, plans, procedures,
> merchandising know-how, processes and research records), software,
> computer programs, innovations, discoveries, improvements, research,
> development, test results, reports, specifications, dates, formats,
> marketing data and plans, business plans, strategies, forecasts,
> unpublished financial information, orders, agreements and other forms

of documents, price and cost information, merchandising opportunities, expansion plans, store plans, budgets, projects, customer, supplier and subcontractor identities, characteristics and agreements, and salary, staffing and employment information. Information in the public domain and information obtained outside of the Employee's employment from other sources will not be considered Confidential Information.

*Id.* **at 23.**

      **(b)**     ***Protection of Confidential Information.*** The Employee acknowledges and agrees that in the performance of the Employee's duties under this Agreement the Company will disclose to and entrust the Employee with Confidential Information which is the exclusive property of the Company and which the Employee may possess or use only in the performance of duties for the Company. The Employee also acknowledges that the Employee is aware that the unauthorized disclosure of Confidential Information, among other things, may be prejudicial to the Company's interests and an improper disclosure of trade secrets. The Employee shall not, directly or indirectly, use, make available, sell, disclose or otherwise communicate to any corporation, partnership, individual or other third party, other than in the course of the Employee's assigned duties and for the benefit of the Company, any Confidential Information.

*Id.*

      **(d)**     ***Proprietary Rights.*** Employee hereby expressly agrees that all work product, including, but not limited to, all information relating to the Company's existing and future products or services, designs, analyses, reports, software, databases, accounting and business methods, customer and supplier identities and lists, inventions (whether or not reduced to practice or documented), developments, methods and improvements (whether patentable or unpatentable, and whether or not reduced to writing), trade secrets and confidential information, copyrightable works, and similar and related information (in whatever form or medium), made or contributed to in whole or in part by Employee while employed by the Company ("Work Product") shall be and remain the sole and exclusive property of the Company. Employee shall communicate promptly and fully all Work Product to the Company.

***Id.* at 24.**

21.     Section 7 of the Agreement also requires the following regarding return
of electronic and computer data to Serra Spring upon separation from the company:

> ***(c)     Delivery of Records, Etc.*** In the event the Employee's
> employment with the Company ceases for any reason, the Employee
> shall not remove from the Company's premises without its prior written
> consent any records, files, drawings, documents, equipment, materials
> and writings received from, created for or belonging to the Company,
> including those which relate to or contain Confidential Information, or
> any copies thereof. Upon request or when employment with the
> Company terminates, the Employee shall immediately deliver the same
> to the Company. This provision will not apply to personal property of
> the Employee that does not contain Confidential Information.

***Id.***

## B.     Sarah Ramnarine's Termination from Serra Spring and She Begins to Unlawfully Compete

22.     Ramnarine's performance as COO was subpar and she was unable to
generate the minimum revenue required to operate the business profitably. Due to
her poor job performance, on December 9, 2021, Serra Spring advised Ramnarine
of the termination of her employment with Serra Spring effective January 8, 2022.
**Ex. B.**

23.     Instead of acting in a professional manner and in violation of the non-
compete provisions of the Agreement, Ramnarine initiated a scheme to unlawfully
compete with Serra Spring.

24.     For instance, a customer, Bamal Fastener Corporation, ordered parts from Serra Spring Michigan in August 2021, and Ramnarine consistently delayed shipment without explanation, until she advised the customer on December 23, 2021 that there had "been some changes" in the company and she would give him a call. **Ex. C.** Upon information and belief, Defendants have sold competing products or solicited business with Bamal Fastener Corporation.

25.     Immediately upon notification of her termination, Ramnarine asked Serra Spring about the terms of her non-compete provision. **Ex. B at 1.** Serra Spring advised Ramnarine orally and in writing that the Agreement clearly set forth the terms of the non-compete provision including the period of time that she is prohibited from competition. ***Id.*** Indeed, she was advised that Serra Spring would enforce the non-compete provisions.

26.     Ramnarine responded that she intended to violate the non-compete provision and operate a directly competing business anyway.

27.     A search of Ramnarine's email communications reveal that she took affirmative steps to breach her obligations to Serra Spring. Even before the effective date of her termination, Ramnarine began telling customers she was "no longer with Serra Spring in sterling heights [sic] Michigan" but "[i]f you will [sic] like to continue working with me … please let me know[.]" **Ex. D.** After the effective date of termination from Serra Spring, Ramnarine immediately began violating her

Agreement including the non-compete provision by conducting a directly competing business under the Serra Spring name from Mississauga, Ontario, Canada (hereinafter referred to as "Serra Spring Canada").

28.    At the time Ramnarine entered into the Agreement she advised Serra Spring that there was a business in Canada under the same name but that was dormant. The Michigan Secretary of State records show that Serra Spring was organized in Michigan on March 11, 2013, **Ex. E**, and the Ontario records show that Serra Spring Canada was incorporated on March 19, 2013, **Ex. F.** Both companies remain active companies until the present day.

29.    Ramnarine began violating her Agreement and tortiously interfering with Serra Spring's contracts and business along with Persaud, specifically the non-compete provision by, including but not limited to, conducting a directly competing business named Serra Spring Canada under the Serra Spring name and using the Serra Spring marks from Mississauga, Ontario, Canada.

30.    Kellie Persaud has knowledge of the Agreement and the obligations and restrictions thereof, and tortiously interfered with the terms of the Agreement, and likewise tortiously interfered with Serra Spring's customers, contacts and business relationships.

C.     **Defendants Solicit Serra Spring Customers and Unlawfully Compete**

31.     Defendants have solicited and/or made sales of competitive products to at least nine (9) Serra Spring customers with whom Ramnarine had contact during her prior employment with Serra Spring, within 250 miles of the Principal Office. Those customers include: ABC Technologies, Airvac Industries, JVIS USA LLC, Meritor, Inc., Nederman Manufacturing and Logistics LLC, RPB Safety LLC, Sky Jack, Inc., Sales & Engineering, Inc., and Nordco Inc. Defendants' solicitations are ongoing and damaging Serra Spring's reputation and business.

32.     There is substantial evidence of Defendants' misconduct. For instance, on January 12, 2022, Serra Spring received an email from a confused customer, Meritor, Inc., addressed to Victor Astudillo, who replaced Ramnarine. **Ex. G.** The customer stated that Ramnarine had advised him that the "new address" of Serra Spring was 6618 Ganymede Rd., Mississauga, Ontario, L5N 4S8 and that the "new email" was SALES@SSMCAN.COM. *Id.* At no time did Serra Spring move to Mississauga, Ontario and at no time was the email address SALES@SSMCAN.COM associated with Serra Spring. 6618 Ganymede Rd., Mississauga, Ontario is within 250 miles of 7515 19 Mile Road, Sterling Heights, Michigan, 48314.

33.     The Defendants have also ordered parts from Serra Spring's suppliers and have sold those parts to Serra Spring customers. For example, prior to

Ramnarine's termination from Serra Spring, she placed an order on behalf of Serra Spring from a supplier for 100,000 custom made parts. The supplier warehoused the purchased parts and would release and deliver them to Serra Spring as needed to fulfill customer needs as required. The parts are the property of Serra Spring and Serra Spring believes that Defendants are soliciting these customers and selling competing products to these customers.

34.     After Ramnarine's termination, she posed as being with Serra Spring and ordered at least 21,000 parts out of the 100,000-part inventory to be delivered to Serra Spring Canada. *See* **Ex. H.**

35.     In this regard, on January 28, 2022, a box was delivered from Serra Spring's supplier in China to its Michigan warehouse addressed to "Serra Spring & Manufacturing LLC" c/o Kellie Persaud. **Ex. I.** Kellie Persaud has never been employed by Serra Spring and instead, based on information and belief, is employed by or an agent of Serra Spring Canada. Persaud is assisting Ramnarine with her violations of the restrictive covenants in the Agreements by soliciting and/or making sales of competitive products to Serra Spring customers.

36.     On January 25, 2022, another customer of Serra Spring's custom parts emailed Victor Astudillo and "sales@ssmcan.com" which forwarded an email chain showing that Ramnarine and Persaud sold parts to the customer on or about January 10, 2022. **Ex. J.**

37.     On January 31, 2022, Persaud responded to an inquiry about interference with a customer relationship and misappropriation of items from a purchase order by stating that "Sales@ssmcan.com is in fact Serra Spring" and "[w]e originated in Canada way before Serra Spring in the US existed." **Ex. K.** Persaud stated this despite the fact that Serra Spring was organized prior to the incorporation of Serra Spring Canada.

38.     On February 16, 2022, the Defendants made a direct sale to a customer, Sales & Engineering, Inc. in Livonia, Michigan, of a "spring for valve" and the purchase order lists Serra Spring & Manufacturing in Sterling Heights, Michigan as the seller. **Ex. L.** This purchase order is false and the sale was made by and for the benefit of Defendants.

39.     On February 23, 2022, a supplier emailed Serra Spring and Ramnarine and requested a state of Michigan tax exemption certificate. Persaud replied with Ramnarine copied on the email that she would complete the request for the supplier. **Ex. M.** It is Serra Springs' belief that Defendants possess no such certificate and were or have submitted Serra Springs' certificates to customers.

40.     The Defendants are also in the process of setting up a website under the Serra Spring Canada name to further compete with Serra Spring in violation of the Agreement. **Ex. N.**

14

41.     Although Ramnarine advised Serra Spring that the Serra Spring Canada entity was "dormant" during her employment, Serra Spring later received a request from a customer sent by email to Serra Spring and Ramnarine for updated certifications for Serra Spring Canada, that showed Ramnarine had been updating the entity's certifications at least as recently as September 1, 2020. **Ex. O.**

42.     Ramnarine has admitted making sales to at least one Serra Spring customer, ABC Technologies. **Ex. P.** On February 15, 2022, Ramnarine emailed Victor Astudillo and a representative from ABC Technologies and stated in part that ABC paid her a deposit for tooling. *Id.*

43.     As recently as March 4, 2022, Ramnarine sent a purchase order release to a customer, JVIS USA LLC, with deliveries of latch tortion springs and latch compression springs scheduled through February 2023. **Ex. Q.** The release lists Serra Spring & Manufacturing in Mississauga, Ontario, Canada as the vendor. *Id.* Ramnarine and Persaud also made additional direct sales to customers in late February and early March 2022. *See* **Exs. R, S.**

44.     All of these actions breached the Agreement, violated the restrictive covenants thereof, and constituted unfair competition and tortious interference with the Agreement and with Serra Spring's customer relationships.

**D.     Defendants' Use of Serra Spring's Name, Marks and Logo in Soliciting and Making Sales**

45.     In unlawfully soliciting and making these sales of competing products, Ramnarine has made use of the Serra Spring name and associated herself with a competing business within 250 miles of the Principal Office in Sterling Heights, Michigan.

46.     Ramnarine has made use of the Serra Spring marks or similar marks, in soliciting and making sales and associating herself with a competing business, Serra Spring Canada. Her actions have and will continue to confuse customers and the marketplace.

47.     The Serra Spring marks are distinctive and recognizable to customers. Customers rely on the service and parts offered by Serra Spring and associate the Serra Spring name and marks with those services and parts. The marks typically appear as some combination of the following:



48.     In marketing and selling products to customers, Defendants have used and continue to use the Serra Spring name and the Serra Spring logo, and represent that their products are Serra Spring products.

49.     Serra Spring's name and logo – including the names "Serra Spring & Manufacturing, LLC," "Serra Spring," and the logos containing those terms, are entitled to protection without proof of a secondary meaning because they are inherently distinctive in that the term "Serra" neither describes nor suggests anything about the product, and the term "Spring & Manufacturing" is suggestive of the nature of the product.

50.     Serra Spring's name and logo are entitled to protection because they are descriptive marks and have a secondary meaning within the relevant market, namely, that consumers associate the term "Serra Spring & Manufacturing" with the custom products provided by Serra Spring for many years.

51.     Serra Spring owns the mark, and Serra Spring and Defendants operate in the same geographical markets. The senior mark (Serra Spring) was in use prior to the junior mark (Serra Spring Canada) because Serra Spring was organized eight days prior to Serra Spring Canada's incorporation date.

52.     Defendants' use of the mark and sales to customers misrepresents the nature, characteristics, qualities, and geographic origin of Serra Spring's goods, services, or commercial activities.

53.     Defendants' use of the mark has already caused actual confusion in the marketplace as demonstrated by the number of customers that have advised Serra Spring that Defendants' use of the mark has confused them as to the rightful user of the Serra Spring mark and which entity the customer is purchasing products from.

54.     Defendants also used false designations of origin, false or misleading descriptions of fact, and false or misleading representations of fact by, without limitation, representing that the products they are selling to Serra Spring customers are Serra Spring products; that they are employed by Serra Spring; that the Serra Spring in Canada is the "true" Serra Spring; and others.

55.     Such use is likely to continue to cause confusion, or to cause mistake, or to deceive customers and the marketplace as to the affiliation, connection, or association of Defendants with Serra Spring, as to the origin, sponsorship, or approval of goods, services, or commercial activities by another person by, without limitation, causing confusion among customers as to whether Serra Spring or Serra Spring Canada is the entity from which they purchase parts, and whether products Defendants sell originate from Serra Spring.

56.     Such use also misrepresents in commercial advertising or promotion the nature, characteristics, qualities, or geographic origin of Defendants' goods, services, or commercial activities and Serra Spring's goods, services, or commercial activities, by Defendants' promotion of their products as Serra Spring products and

representation that the products originated from Serra Spring in Sterling Heights, Michigan.

**E. Defendants' Use of Serra Spring's Trade Secrets to Unlawfully Compete**

57.     During the course of her employment with Serra Spring, Ramnarine was given access to Confidential Information and proprietary business information, which is the exclusive property of Serra Spring and constitutes trade secret information.

58.     After her termination from Serra Spring, Ramnarine retained much of this trade secret information without returning it in violation of the Agreement, and is now using it to unlawfully compete against Serra Spring.

59.     This trade secret information includes but is not limited to (a) data missing from a Quickbooks Download related to customer invoices and customers' order history; (b) certain customer invoices; (c) all active and non-active Product Part Approval Process (PPAP) data; (d) the Serra Spring UPS Account login information; (d) the Drop Box Data for ISO (International Organization for Standardization) certification to review with Serra Spring's Quality Consultant; (e) missing PPAP data in the submission history in the IMDS (International Material Data System) portal where PPAP documents are uploaded; (f) confidential customer prints/drawings setting forth the specifications of each custom product made for that customer; (g) customer data including contacts and history of the order activity with

the customers; and (h) customer purchase orders which show trade secret information including customer pricing.

60.    As to the customer prints/drawings, customers send Serra Spring a "print" or "drawing" of a product that the customer requires each time the customer requires a newly designed custom product. This print includes all the engineering specifications and other information that the customer needs in the design of the product. The customer communicates to Serra Spring that the print or drawing is confidential and not to be disseminated other than for purposes of providing a quote and manufacturing the product. Serra Spring uses the print or drawing to create the custom product that the customer requires, and then retains those prints on file for the customer for future orders of that product from that customer.

61.    Ramnarine has retained many of the very valuable prints or drawings that are specific to customers and are the property and trade secrets of Serra Spring, and is using them to sell custom parts to customers, and has failed to return them to Serra Spring.

62.    The Drop Box Data includes previous manager reviews, PPAP data, and other data that the Quality Review Consultant uses to submit PPAP approvals, certifications for ISO and other information needed for Serra Spring to do business.

63.    PPAP approvals must be submitted to a database where automobile manufacturers approve certain parts for their suppliers and the suppliers providing

those parts, which are needed for Serra Spring to do business with automobile manufacturers.

64.    Ramnarine has failed to return the PPAP data, which consists of documents including specific engineering information and other specifications, and she is retaining PPAP documents for multiple products.

65.    The purchase orders are confidential and trade secret information because they contain customer pricing and other valuable and confidential information that Serra Spring needs to maintain customer relationships.

66.    Ramnarine retained some of the trade secret information in electronic format and other trade secret information in paper format.

67.    The information above is confidential because it relates to customer data, product specification data that is used by Serra Spring to approve its products so that the products can be sold, login information that allows Serra Spring to access its own PPAP submission history and its UPS account to access customers' shipping addresses, and specific customer prints and drawings that set forth proprietary information regarding specialized products that Serra Spring manufactures for customers.

68.    Serra Spring took sufficient measures to keep this data confidential by not disseminating it to the public and classifying the information as confidential and proprietary in its Agreement. *See, e.g., Radiant Global Logistics, Inc. v. Furstenau*,

368 F. Supp. 3d 1112, 1128 (E.D. Mich. 2019) (finding sufficient measures to safeguard the information for purposes of both the federal DTSA and the Michigan Uniform Trade Secrets Act through "either an express agreement between the employer and employee restricting or prohibiting disclosure by the latter to third parties; a disclosure by employer to employee in confidence or with a tacit understanding, inferable from the attendant circumstances, that the information is confidential; or security precautions utilized by the employer to insure that only a limited number of authorized individuals have access to the information.").

69.     Defendants have actually misappropriated the trade secrets above by using the information to compete against Serra Spring including without limitation by sending and receiving shipments using the UPS account login in this District; using customer data to solicit sales from customers in this District; and using PPAP and ISO certification data in connection with her competing products.

**F.     Ramnarine's Failure to Return Computer and Electronic Data and Exceeding Authorized Access to Serra Spring Data**

70.     After the termination of her employment, Ramnarine retained Confidential Information and proprietary business information as defined in Section 7 of the Agreement in electronic and computer format, which is the exclusive property of Serra Spring. Serra Spring has taken reasonable efforts to protect this information from disclosure to third parties.

71.    The Agreement required Ramnarine to return all Serra Spring electronic data immediately upon separation from Serra Spring as defined in Section 7 of the Agreement.

72.    Serra Spring attempted multiple times to obtain the return of the data but Ramnarine initially failed to return any data, then returned incomplete data, and has still failed to return the data.

73.    Ramnarine obtained the data by accessing Serra Spring's computer system and then exceeded her authorized access to it and used the data in violation of the Agreement and Federal law.

74.    Ramnarine has failed or refused to return all electronic and computer data and property of Serra Spring and has exceeded her authorized access, including the following computer/electronic data: (a) certain data missing from a Quickbooks Download sent to Serra Spring; (b) certain customer invoices; (c) all active and non-active Product Part Approval Process (PPAP) data; (d) the remaining amount in a Chase account to be transferred to Federnfabrik Schmid AG; (e) the Serra Spring UPS Account login Username/Password; (f) the Drop Box Data for ISO certification to review with Quality Consultant; and (g) the IMDS Login for PPAP submission history. This data is vital and proprietary business information necessary to the operations and success of Serra Spring.

75.     Ramnarine obtained this data in part by accessing Serra Spring's computer systems while employed by Serra Spring and copying it onto her own computer, by accessing Serra Spring's email system, and by using the data and confidential information for her benefit.

76.     Ramnarine thereafter exceeded her authorized access by, among other things, using PPAP data for her competing products being marketed to customers with the Serra Spring name; exceeded her authorized use of the UPS Account; exceeded her authorized use of the Chase account; and exceeded her authorized use of the remaining data. *See, e.g., EF Cultural Travel BV v. Zefer Corp.*, 318 F.3d 58, 62 (1st Cir. 2003); *CollegeSource, Inc. v. AcademyOne, Inc.*, 597 F. App'x 116, 129-30 (3d Cir. 2015).

77.     Ramnarine obtained something of substantial value from this unauthorized access in her use of the data to further her fraudulent marketing and sales of products bearing Serra Spring marks.

78.     Serra Spring has suffered damage from Ramnarine's unauthorized access including but not limited to the impairment to the integrity or availability of the data and information, and the damage exceeds five thousand dollars ($5,000).

79.     The failure and/or refusal to return the data and property is in violation of the Agreement, exceeds Ramnarine's authorized access to the computer/electronic data of Serra Spring, and is a violation of the CFAA. The delay

in returning the data is itself a violation of the CFAA regardless of if and when Ramnarine ultimately returns the data to Serra Spring.

### G.   Serra Spring Sends the Cease and Desist Letter

80.   On February 21, 2022, Serra Spring sent a cease and desist letter to Ramnarine, demanding that she cease the competing activities and return all electronic and computer data within 48 hours or face an immediate lawsuit to enforce Serra Spring's rights. **Ex. T.**

81.   Ramnarine failed to respond to the letter.

### FIRST CAUSE OF ACTION

**(False Association and Unfair Competition
Under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) against Both Defendants)**

82.   Serra Spring incorporates by reference the above paragraphs as if fully set forth herein in their entirety.

83.   Serra Spring's name and marks are protected under the Lanham Act.

84.   The Defendants, in connection with goods or services, used in commerce a word, term, name, symbol, a false designation of origin, a false or misleading description of fact, or a false or misleading representation of fact, including making a false or misleading statement of fact concerning Serra Spring's products, which actually or tends to deceive a substantial portion of the intended audience, i.e., Serra Spring's customers, and is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person

with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

85.     The statement is material in that it will likely influence the deceived consumer's purchasing decisions, causing certain customers to purchase products from Defendants rather than Serra Spring.

86.     The statement was introduced into interstate commerce.

87.     There is a causal link between the statements and harm to Serra Spring.

88.     As a result, Serra Spring has suffered, continues to suffer, and will suffer in the future, damages in an amount to be proven at trial.

89.     Serra Spring is also entitled to injunctive relief under 15 U.S.C. § 1125(a) under the terms set forth in the Prayer for Relief

## SECOND CAUSE OF ACTION

**(False Advertising and Unfair Competition
under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) against Both Defendants)**

90.     Serra Spring incorporates by reference the above paragraphs as if fully set forth herein in their entirety.

91.     Serra Spring's name and marks are protected under the Lanham Act.

92.     The Defendants, in connection with goods or services, used in commerce a word, term, name, symbol, a false designation of origin, a false or misleading description of fact, or a false or misleading representation of fact, including making a false or misleading statement of fact concerning Serra Spring's

products, which actually or tends to deceive a substantial portion of the intended audience, i.e., Serra Spring's customers, and in commercial advertising or promotion, misrepresented the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

93.     The statement is material in that it will likely influence the deceived consumer's purchasing decisions, causing certain customers to purchase products from Defendants rather than Serra Spring.

94.     The statement was introduced into interstate commerce.

95.     There is a causal link between the statements and harm to Serra Spring.

96.     As a result, Serra Spring has suffered, continues to suffer, and will suffer in the future, damages in an amount to be proven at trial.

97.     Serra Spring is also entitled to injunctive relief under 15 U.S.C. § 1125(a) under the terms set forth in the Prayer for Relief.

## **THIRD CAUSE OF ACTION**

### **(Violation of the DTSA, 18 U.S.C. § 1836 against Both Defendants)**

98.     Serra Spring incorporates by reference the above paragraphs as if fully set forth herein in their entirety.

99.     Ramnarine was given access during her employment with Serra Spring to confidential and proprietary business information and trade secret information, including the customer and product data set forth above.

100.    The trade secret information above is confidential because it relates to customer data, product specification data that is used by Serra Spring to approve its products so that the products can be sold, and login information that allows Serra Spring to access its own PPAP submission history and its UPS account.

101.    Serra Spring took sufficient measures to keep this data confidential by not disseminating it to the public and classifying the information as confidential and proprietary in its Agreement. Ramnarine retained the confidential data and is using it to compete in violation of the Agreement.

102.    Defendants have actually misappropriated the trade secrets above by using the information to compete against Serra Spring including without limitation by sending and receiving shipments using the UPS account login in this District; using customer data including pricing, customer prints/drawings, and other information to solicit sales from customers in this District; and using PPAP and ISO certification data in connection with her competing products.

103.    As a result, Serra Spring has suffered, continues to suffer, and will suffer in the future, damages in an amount to be proven at trial.

104.    Serra Spring is also entitled to injunctive relief under the DTSA under the terms set forth in the Prayer for Relief.

## FOURTH CAUSE OF ACTION

### (Violation of the CFAA, 18 U.S.C. § 1030 against Sarah Ramnarine)

105.    Serra Spring incorporates by reference the above paragraphs as if fully set forth herein in their entirety.

106.    Sarah Ramnarine has knowingly accessed electronic data without authorization or exceeded authorized access with the intent to defraud.

107.    Sarah Ramnarine has failed and/or refused to return, and had delayed returning, electronic and computer data belonging to Serra Spring including the items specified above.

108.    Sarah Ramnarine's failure to return and delay in returning the data has caused damage to Serra Spring by impairing the integrity or availability of the data and information.

109.    Sarah Ramnarine's failure to return and delay in returning the data has caused loss to Serra Spring by causing a reasonable cost to Serra Spring of responding to Sarah Ramnarine's offense, conducting a damage assessment, restoring the data or information to its condition prior to the offense, and causing lost revenue, incurred costs, and consequential damages incurred because of interruption of service, in an amount that exceeds five thousand dollars ($5,000).

110.    As a result, Serra Spring has suffered, continues to suffer, and will suffer in the future, damages in an amount to be proven at trial.

111.    Serra Spring is also entitled to injunctive relief under the terms set forth in the Prayer for Relief under 18 U.S.C. § 1030(g), which states that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."

### FIFTH CAUSE OF ACTION

**(Breach of Contract against Sarah Ramnarine)**

112.    Serra Spring incorporates by reference the above paragraphs as if fully set forth herein in their entirety.

113.    Serra Spring performed all of its obligations under the Agreement.

114.    Sarah Ramnarine has breached the Agreement through her actions set forth above, including but not limited to soliciting and/or making sales of competitive products to Serra Spring customers within 250 miles of the Principal Office, operating a competing business, breaching the confidentiality provisions of the Agreement, and failing to return all data and causing a delay in the return of data.

115.    As a result, Serra Spring has suffered, continues to suffer, and will suffer in the future, damages in an amount to be proven at trial. Serra Spring also requests the injunctive relief set forth below.

## SIXTH CAUSE OF ACTION

### (Tortious Interference with a Business Relationship/Expectancy against both Defendants)

116.    Serra Spring incorporates by reference the above paragraphs as if fully set forth herein in their entirety.

117.    Serra Spring has valid existing contracts and relationships with customers and expectancy of other business relationships with customers.

118.    The Defendants had knowledge of the business relationships and expectancies.

119.    The Defendants intentionally interfered with the business relationships and expectancies by, among other things, soliciting and/or making sales to Serra Spring customers; representing that Defendants were transacting on behalf of Serra Spring; and telling customers that the "new" address and email were replacing the real Serra Spring information.

120.    The Defendants' breach is ongoing and continuing in nature.

121.    As a result, Serra Spring has suffered, continues to suffer, and will suffer in the future, damages in an amount to be proven at trial. Serra Spring also requests the injunctive relief set forth below.

## SEVENTH CAUSE OF ACTION

### (Tortious Interference with a Contract against Kellie Persaud)

122.   Serra Spring incorporates by reference the above paragraphs as if fully set forth herein in their entirety.

123.   Serra Spring has a valid existing contract (the Agreement) with Sarah Ramnarine.

124.   Kellie Persaud has knowledge of the existing Agreement and its obligations and restrictions.

125.   Kellie Persaud has intentionally interfered with the terms of the Agreement by assisting Sarah Ramnarine in breaching the Agreement.

126.   As a result, Serra Spring has suffered, continues to suffer, and will suffer in the future, damages in an amount to be proven at trial. Serra Spring also requests the injunctive relief set forth below.

## EIGHTH CAUSE OF ACTION

### (Common Law Unfair Competition against Both Defendants)

127.   Serra Spring incorporates by reference the above paragraphs as if fully set forth herein in their entirety.

128.   Through the actions alleged herein, Defendants have committed fraud, bad-faith misrepresentation, misappropriation, and product confusion.

32

129.    Defendants have advised Serra Spring customers that they are the "real" Serra Spring and that customers should buy their products from Defendants and not Serra Spring.

130.    Defendants have deceived customers by telling them that Serra Spring's operations have moved to Canada when in fact Serra Spring has not moved operations from the United States.

131.    As a result, Serra Spring has suffered, continues to suffer, and will suffer in the future, damages in an amount to be proven at trial. Serra Spring also requests the injunctive relief set forth below.

## **NINTH CAUSE OF ACTION**

### **(Permanent Injunction against both Defendants)**

132.    Serra Spring incorporates by reference the above paragraphs as if fully set forth herein in their entirety.

133.    Serra Spring is likely to succeed on the merits of its claims under the Lanham Act, the DTSA, and the CFAA, and its claims for breach of contract, common law unfair competition, and tortious interference with contract and business relationships.

134.    Serra Spring will suffer irreparable harm absent a permanent injunction, including without limitation Defendants' continuing interference with business

relationships, continuing confusion of customers, and harm to Serra Spring's business.

135.   Granting the injunction will not cause substantial harm to others, as Defendants are wrongfully interfering with Serra Spring's business.

136.   The injunction will advance the public interest, as Defendants are wrongfully interfering with Serra Spring's business and the public interest is served by ensuring fair competition.

137.   Accordingly, Serra Spring requests a permanent injunction requiring Defendants and those persons or entities in active concert or participation with them and any others who receive actual notice of the judgment to cease the competitive activities until two years from January 8, 2022, including without limitation:

i.   Requiring Defendants to cease making sales or soliciting sales from any customers of Serra Spring;

ii.   Requiring Defendants to cease all contact with suppliers, actual and prospective customers, and others associated with Serra Spring;

iii.   Requiring Defendants to cease operation of Serra Spring Canada;

iv.   Prohibiting Defendants from operating (directly or indirectly) any competing business; and

v.   Requiring Defendants to cease all use of Serra Spring's name, marks and data.

138.    Accordingly, Serra Spring respectfully requests that the Court enter a permanent injunction on the terms set forth herein and in the Prayer for Relief.

## TENTH CAUSE OF ACTION

### (Temporary Restraining Order against Both Defendants)

139.    Serra Spring incorporates by reference the above paragraphs as if fully set forth herein in their entirety.

140.    Serra Spring is likely to succeed on the merits of its claims.

141.    There is a substantial threat that Serra Spring will suffer irreparable harm absent a temporary restraining order, including without limitation Defendants' continuing interference with business relationships, continuing confusion of customers, and harm to Serra Spring's business.

142.    The threatened injury outweighs any damage that the temporary restraining order might cause the Defendants, as the Defendants are wrongfully interfering with Serra Spring's business.

143.    The temporary restraining order will not disserve the public interest, as Defendants are wrongfully interfering with Serra Spring's business and the public interest is served by ensuring fair competition.

144.    Accordingly, Serra Spring requests a temporary restraining order requiring Defendants and those persons or entities in active concert or participation

with them and any others who receive actual notice of the judgment to cease the competitive activities until two years from January 8, 2022, including:

i.      Requiring Defendants to cease making sales or soliciting sales from any customers of Serra Spring;

ii.     Requiring Defendants to cease all contact with suppliers, actual and prospective customers, and others associated with Serra Spring;

iii.    Requiring Defendants to cease operation of Serra Spring Canada;

iv.     Prohibiting Defendants from operating (directly or indirectly) any competing business; and

v.      Requiring Defendants to cease all use of Serra Spring's name, marks and data.

145.    Accordingly, Serra Spring respectfully requests that the Court enter a temporary restraining order on the terms set forth herein and in the Prayer for Relief

## V.      PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Serra Spring, through its counsel, prays and demands as follows:

A.      On the First Cause of Action, for an award of damages in favor of Serra Spring in an amount to be proven at trial, punitive damages, plus pre- and post-judgment interest at the maximum legal rate, attorneys' fees, costs and disbursements for this action, as well as a temporary restraining order and permanent

injunction requiring Defendants and those persons or entities in active concert or participation with them and any others who receive actual notice of the judgment to cease the false association of their products with Serra Spring indefinitely and cease all competitive activities until two years from January 8, 2022, including:

      i.      Requiring Defendants to cease making sales or soliciting sales from any customers of Serra Spring;

      ii.      Requiring Defendants to cease all contact with suppliers, actual and prospective customers, and others associated with Serra Spring;

      iii.      Requiring Defendants to cease operation of Serra Spring Canada;

      iv.      Prohibiting Defendants from operating (directly or indirectly) any competing business; and

      v.      Requiring Defendants to cease all use of Serra Spring's name, marks and data.

B.      On the Second Cause of Action, for an award of damages in favor of Serra Spring in an amount to be proven at trial, punitive damages, plus pre- and post-judgment interest at the maximum legal rate, attorneys' fees, costs and disbursements for this action, as well as a temporary restraining order and permanent injunction requiring Defendants and those persons or entities in active concert or participation with them and any others who receive actual notice of the judgment to

cease the false advertising of their products as Serra Spring products indefinitely and cease all competitive activities until two years from January 8, 2022, including:

      i.     Requiring Defendants to cease making sales or soliciting sales from any customers of Serra Spring;

      ii.     Requiring Defendants to cease all contact with suppliers, actual and prospective customers, and others associated with Serra Spring;

      iii.     Requiring Defendants to cease operation of Serra Spring Canada;

      iv.     Prohibiting Defendants from operating (directly or indirectly) any competing business; and

      v.     Requiring Defendants to cease all use of Serra Spring's name, marks and data.

C.     On the Third Cause of Action, for an award of damages in favor of Serra Spring in an amount to be proven at trial, punitive damages, plus pre- and post-judgment interest at the maximum legal rate, attorneys' fees, costs and disbursements for this action, as well as a temporary restraining order and permanent injunction requiring Defendants and those persons or entities in active concert or participation with them and any others who receive actual notice of the judgment to cease the use of trade secrets of Serra Spring indefinitely.

D.     On the Fourth Cause of Action, for an award of damages in favor of Serra Spring in an amount to be proven at trial, punitive damages, plus pre- and post-

judgment interest at the maximum legal rate, attorneys' fees, costs and disbursements for this action, as well as a temporary restraining order and permanent injunction requiring Ramnarine and those persons or entities in active concert or participation with her and any others who receive actual notice of the judgment requiring Ramnarine to immediately deliver to Serra Spring all electronic and computer data of Serra Spring in her possession.

E.      On the Fifth Cause of Action, for an award of damages in favor of Serra Spring in an amount to be proven at trial, punitive damages, plus pre- and post-judgment interest at the maximum legal rate, attorneys' fees, costs and disbursements for this action, as well as injunctive relief as set forth below.

F.      On the Sixth Cause of Action, for an award of damages in favor of Serra Spring in an amount to be proven at trial, plus pre- and post-judgment interest at the maximum legal rate, attorneys' fees, costs and disbursements for this action, as well as injunctive relief as set forth below.

G.      On the Seventh Cause of Action, for an award of damages in favor of Serra Spring in an amount to be proven at trial, punitive damages, plus pre- and post-judgment interest at the maximum legal rate, attorneys' fees, costs and disbursements for this action, as well as injunctive relief as set forth below.

H.      On the Eighth Cause of Action, for an award of damages in favor of Serra Spring in an amount to be proven at trial, punitive damages, plus pre- and post-

judgment interest at the maximum legal rate, attorneys' fees, costs and disbursements for this action, as well as injunctive relief as set forth below.

I.     On the Ninth Cause of Action, for a permanent injunction requiring Defendants and those persons or entities in active concert or participation with them and any others who receive actual notice of the judgment to cease all competitive activities until two years from January 8, 2022, including:

i.     Requiring Defendants to cease making sales or soliciting sales from any customers of Serra Spring;

ii.    Requiring Defendants to cease all contact with suppliers, actual and prospective customers, and others associated with Serra Spring;

iii.   Requiring Defendants to cease operation of Serra Spring Canada;

iv.    Prohibiting Defendants from operating (directly or indirectly) any competing business;

v.     Requiring Defendants to cease all use of Serra Spring's name, marks and data; and

vi     Requiring Defendants to cease all use of Serra Spring's trade secrets.

J.     On the Tenth Cause of Action, for a temporary restraining order requiring Defendants and those persons or entities in active concert or participation with them and any others who receive actual notice of the judgment to cease all competitive activities immediately, including:

i.      Requiring Defendants to cease making sales or soliciting sales from any customers of Serra Spring;

ii.     Requiring Defendants to cease all contact with suppliers, actual and prospective customers, and others associated with Serra Spring;

iii.    Requiring Defendants to cease operation of Serra Spring Canada;

iv.     Prohibiting Defendants from operating (directly or indirectly) any competing business;

v.      Requiring Defendants to cease all use of Serra Spring's name, marks and data; and

vi.     Requiring Defendants to cease all use of Serra Spring's trade secrets.

K.      An award of costs and attorneys' fees, if applicable; and

L.      Any other relief as this Court may deem proper and just.

## <u>JURY DEMAND</u>

Plaintiff requests trial by jury of all matters that can be so tried.

Dated: March 9, 2022

Respectfully Submitted,

*/s/ Christopher V. Burtley*
Christopher V. Burtley (Bar Number P80203)
BARNES & THORNBURG LLP
3000 Town Center, Suite 2440
Southfield, MI 48075
Telephone: (947) 215-1323

Brian W. Lewis
David B. Ritter (pro hac vice forthcoming)

Andrew Hemmer (pro hac vice
fortcoming)
BARNES & THORNBURG LLP
One North Wacker Dr., Suite 4400
Chicago, IL 60606
Telephone: (312) 214-8320
*Counsel for Plaintiff, Serra Spring &
Manufacturing, LLC*

## __VERIFICATION__

I, Albert Enste, affirm under penalty of perjury that based on my personal knowledge, investigation, discussion with Serra Spring personnel and review of documents, the information contained herein is true and correct to the best of my knowledge and belief.

Dated:_____          _____
                                                        Albert Enste